UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| ESTILL G. WALKER, | ) |
| | ) |
|     Plaintiff, | ) Civil Action No. 6:09-cv-243-JMH |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) **MEMORANDUM OPINION AND ORDER** |
| SECURITY | ) |
| | ) |
|     Defendant. | ) |
| | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits. [Record Nos. 11 and 12.][1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   BACKGROUND**

Plaintiff filed for disability benefits on March 17, 2006, alleging an onset of disability of January 15, 2006, due to post-traumatic and post-operative problems with his left ankle, arthritis of the back, shoulder, and arms, and asthma. Plaintiff's

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

1

claim was denied at the initial and reconsideration stages of review, and he timely requested a hearing before an administrative law judge ("ALJ"). After the hearing, which was held on April 1, 2008, the ALJ issued a decision dated July 25, 2008, that was unfavorable to Plaintiff, concluding that Plaintiff was disabled. In his decision, the ALJ concluded that Plaintiff's Residual Functional Capacity ("RFC") for a medium range of work would not permit his past work but that there existed jobs in significant numbers in the national economy that the Plaintiff could perform. Specifically, the ALJ found that:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2) The claimant has not engaged in substantial activity since January 15, 2006, the alleged onset date.
>
> (3) The claimant has the following severe impairments: status post (April 2004) work related open dislocation of left ankle, with surgeries, and residual neuropathic pain of left ankle; and history of asthma.
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium exertional work as defined in 20 CFR 404.1567(c) and 416.967(c), within these parameters: lift/carry 50 pounds occasionally, 25 pounds frequently; only occasional pushing/pulling or use of foot controls with left lower extremity; the

>           claimant should avoid concentrated exposure to
>           fumes, odors, dusts, and gases.
>
> (6)   The claimant is unable to perform any past relevant work.
>
>           (7)  The claimant was born on August 4, 1963
>           and is now 44 years old, which is defined as a
>           younger individual age 18-49.
>
>           (8)  The claimant has at least a high school
>           education and is able to communicate in
>           English.
>
>           (9) Transferability of job skills is not
>           material to the determination fo disability
>           because using the Medical-Vocational Rules as
>           a framework supports a finding that the
>           claimant is "not disabled," whether or not the
>           claimant has transferable job skills.
>
>           (10) Considering the claimant's age,
>           education, work experience, and residual
>           functional capacity, there are jobs that exist
>           in significant numbers in the national economy
>           that the claimant can peform.
>
>           (11) The claimant has not been under a
>           disability, as defined in the Social Security
>           Act, from January 15, 2006 through the date of
>           this decision.

[AR at 11-15 (internal citations and analysis for each statement above omitted)].

Plaintiff then sought review of the hearing decision by the Appeals Council. The request for review was denied on June 22, 2009. Plaintiff timely appealed that decision. This matter is now ripe for review and properly before this Court under § 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## II. OVERVIEW OF THE PROCESS

The Administrative Law Judge ("ALJ") and, on appeal, the Appeals Council conducts a five-step sequential evaluation in determining disability:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Servs*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the

4

fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary."  *Id.*

**III. STANDARD OF REVIEW**

In reviewing a decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the decision below is limited to an inquiry into whether the ALJ or Appeals Council's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ or the Appeals Council employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**IV.  ANALYSIS**

Plaintiff argues that the ALJ erred in concluding that he is not disabled because the conditions from which he suffers, when considered in combination, prevent him from performing the lifting, carrying, or sitting required to perform the medium exertional work activity described in the residual functional capacity assessment adopted by the ALJ.  For the reasons which follow, the Court

disagrees, and the final decision of the Commissioner shall be affirmed.

There is no merit to the first element of Plaintiff's argument, that the ALJ erred in giving more weight to the opinion of the consulting examiner than that of Plaintiff's treating physicians. The Court has examined the ALJ's decision and the record and can find no evidence that the ALJ favored the opinion of a consulting physician over that of a treating physician or otherwise disregarded the opinions of Plaintiff's treating physicians with respect to their diagnoses or evaluations of Plaintiff's then-current condition and limitations.

Rather, the record reveals that, in a report of a consultative examination which took place in May 2006, Dr. Jason Harris concluded that Plaintiff had a mild level of limitation in activities of daily living and job-related activities due to pain in his left foot and chest pain. [AR at 218]. He reached this conclusion after reviewing medical records and after his observation and examination of Plaintiff. Although Harris could detect some decreased breath sounds in both Walker's lungs and Walker's left foot was slightly cooler than his right, Harris found that Plaintiff had no sensory deficits, 5/5 strength, no limitations on range of motion, normal gait and station, and that he manifested no difficulties in sitting, standing, moving about, handling objects, hearing, seeing, speaking, and traveling. [AR at

12-13, 217-218]. In making these observations, Harris did not dispute Plaintiff's prior diagnoses and, in his assessment, recognizes and concurs with those diagnoses. [*See* AR at 218]. In other words, Dr. Harris' opinion is, frankly, not inconsistent with the other evidence of record, discussed below, particularly in light of the absence of other medical findings or observations concerning Plaintiff's limitations from the relevant period of alleged disability by any other source of medical treatment. *See* 20 C.F.R. §§ 404.1526(d)(3), (4), 416.927(d)(3); *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Accordingly, this argument fails.

Walker next disputes the ALJ's determination that his statements concerning the intensity, persistence, and limiting effects of the pain that he reported were not entirely credible. Specifically, he argues that it is not supported by substantial evidence because the ALJ failed to give appropriate credence to Walker's testimony as to the severity of and disabling nature of the symptoms arising from his conditions. For the reasons which follow, Plaintiff's argument fails in this respect, as well.

When a claimant alleges disability based on subjective complaints, he must present objective medical evidence of an underlying medical condition. *See* 20 C.F.R. §§ 404.1529, 416.929; *Walters*, 127 F.3d at 531. If a medically determinable condition exists, the adjudicator must then decide if objective medical

evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to such symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *Walters*, 127 F.3d at 531. "The absence of sufficient objective evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531. That said, the ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id.* After reviewing the record and conducting this analysis, the Court concludes that substantial evidence exists in the record to support the ALJ's adverse credibility finding, and Plaintiff's second argument fails.

Plaintiff can and has identified a long history of medical evidence confirming that he suffered from an ankle injury and subsequent nerve damage in that ankle and foot and that he suffered or suffers from asthma. There is also evidence that he has suffered or suffers from arthritis.[2] In other words, he has provided evidence of underlying medical conditions. However, considering the evidence available to the ALJ and this Court, the objective evidence of record alone does not confirm the severity of the alleged symptoms arising from the condition or identify his

---

[2] Plaintiff does not aver that the ALJ erred when he did not conclude that Plaintiff's arthritis was not a severe impairment.

conditions to be of such severity that they could reasonably be expected to give rise to such symptoms of pain. *See* 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4); *Walters*, 127 F.3d at 531-32. Accordingly, the ALJ properly considered Plaintiff's credibility in determining whether Plaintiff's subjective complaints of pain supported his allegation of disability in light of the medical evidence of record.

By way of history, the Court notes that Plaintiff injured his left ankle in a work accident at a lumberyard in April 2004 [AR at 185-93, 197-211, and 325-31], but he was cleared to return to work after his ankle improved in 2005. [AR at 148-63, 170-73; 176-82, 194-96, 212-13, 225-311, 316-24, and 381-684]. He complained of pain in his ankle and foot during the healing process, and, after an EMG was performed, he was diagnosed with neuropathic pain and tibial mononeuropathy at the ankle and prescribed Neurontin. [AR at 176]. When last he sought medical treatment for his ankle, on August 11, 2005, Plaintiff was experiencing some slight swelling of the ankle but had 5/5 strength and apparently no other abnormalities. [AR at 148.] The examining physician noted that the use of Neurontin "greatly improved" Plaintiff's pain, by which the Court assumes the physician to have meant that Plaintiff's pain was significantly diminished, and further noted that Plaintiff was working in a lumber yard from 2:30 p.m. until 3 a.m. [*Id.*] The physician advised Plaintiff to continue his medication and return

9

as needed. A review of the record as a whole reveals that Plaintiff continued this course of treatment for some time for a number of medical records noted that he was taking "nerve pills" for his ankle or foot. However, he testified during his hearing, on April 1, 2008, that he was no longer able to obtain that medication because he was without insurance or a medical card.

Plaintiff's arthritis is first discussed in the notes of a visit to Plaintiff's family physician in February 2001 [AR at 361], at which time he was prescribed Celebrex. At that time, he described the pain as beginning while in the course of treatment for a dog bite, during late 2000. He again sought treatment for this condition in April 2003, at which time Plaintiff was found to have positive Rheumatoid factor and was diagnosed with polyarthritis and Rheumatoid arthritis following complaints of pain in his shoulder and elbow joints and his hands. [*See* AR at 343-344.] He was prescribed Vicoprofen, Mobic, and Plaquenil to treat the condition at that time. [*Id*.] He was still reportedly taking Mobic on October 8, 2003 [AR at 338], but, as of November 12, 2003, there was no reported "current medication" upon his presentation at an emergency department for complaints of foot pain [AR at 334]. He again reported taking Mobic and Ibuprofen on April 29, 2004, and on May 5, 2004, at the time of his discharge following his ankle dislocation. [AR at 156, 328.] During later medical treatment for a variety of matters, those providing treatment noted only that he

was taking ibuprofen or, on occasion, "nerve pills" or a pill for the nerve in his foot. On June 9, 2006, disability examiner Harris reported Celebrex as Plaintiff's sole "current medication" [AR at 216]. However, by the time of Plaintiff's hearing before the ALJ, he was taking "just Tylenol." [AR at 32].

Plaintiff has also testified that he experiences chest pain around his rib cage lasting for 10-15 minutes at a time, seven or eight times a day, due to asthma, and that he experiences shortness of breath and uses an inhaler twice a day due to bronchial asthma [AR at 34-35, 41]. He has not, however, identified any diagnosis of asthma by a physician in the medical records submitted as part of his claim. Rather, he has identified several occasions where physicians have identified signs and symptoms of recurrent or chronic bronchitis [AR at 341, 368] or he has self-reported a diagnosis of asthma [AR at 356]. He has, however, testified that he was diagnosed with and has suffered from asthma since he was a child [AR at 41], which would explain the absence of a diagnosis in his the more recent medical records available to the Court.

In light of these issues, Walker testified that he is only able to drive short distances, such as to the store or the post office and back to his home, due to lower back pain. [AR at 22]. He testified to pain in his lower back, from arthritis, "that comes and goes" but once there, "when it comes, it stays for a while." [AR at 28]. He has also testified that he experiences constant

pain in his left ankle, that he keeps it elevated "all the time" and uses an ice pack to alleviate the pain at least two to three times a week. [AR at 30]. When asked to describe the pain, he testified that he has "hard pains in [his] heel and . . . lightning pains, [which run] all through [his] foot." [AR at 31.] He testified that the pain in his back was "real sharp, like somebody sticking a knife" in him, that he was experiencing the pain during the hearing, and that he usually experienced the pain for at least a week at a time with two to three days respite between bouts of back pain. [*Id.*] Plaintiff also testified that he could walk five minutes before needing to stop and rest and stand for five or ten minutes before needing to sit down. [AR at 32]. He testified as well that he could stoop to get into a car. [AR at 32-33]. He testified that his fingers stiffen up and that the stiffness comes and goes "a lot." [AR at 33]. He estimated that he would be able to pick up a five pound weight from a table then replace it, without carrying it anywhere, from a standing position. [*Id*]. Finally, he estimated that he could sit for fifteen or twenty minutes before needing to stand up, indicating that, at that time during the hearing, he needed to stand up. [*Id.; see also* AR at 39]. Plaintiff testified that during the night, he was "up and down" due to pain in his back and shoulders. [AR at 38.] Finally, Walker has evaluated his overall pain at a level of 7 to 10 out of ten and testified that "it hurts all the time." [AR at 45-46].

The ALJ found that Walker's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms," but he concluded that Walker's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they suggested that he could do less than the work described in the RFC. [AR at 13.] The ALJ based his credibility decision on several facts. Namely that, over the course of Walker's treatment history, once cleared to return to work following injuries, not a single one of Plaintiff's treating physicians suggested that he was unable to work or placed restrictions on his ability to do work as a result of the underlying conditions or the symptoms of pain which he reportedly suffered as a result of them. Further, his complaints of debilitating pain notwithstanding, Plaintiff reported in a Pain and Daily Activities Questionnaire and testified during his hearing that he was able to cook, clean, shop, drive, manage his own money, take out the garbage, wash dishes, do laundry, vacuum, smoke cigarettes, visit with friends and family members, play games with and read to his daughter, watch television, go fishing with a friend and his daughter, and attend to his personal needs. [AR at 116-120, 215-220]. Finally, the ALJ observed that Plaintiff entered the hearing room with an apparently normal gait and station. [AR at 13].

Contrary to Plaintiff's argument, these facts support the

13

ALJ's credibility finding and assessment of Plaintiff's RFC with an adequate basis. *See Longworth v. Commissioner, Social Security Admin.*, 402 F.3d 591, 596 (6th Cir. 2005). Since Plaintiff has the burden of proving that his condition caused disabling limitations, 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), 404.1529(a), 416.912(a), 416.929(a); *Foster*, 279 F.3d at 353; *Walters*, 127 F.3d at 531; *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993), it follows that his claim must fail. Here, substantial evidence – taken from treating and examining consultant physicians and often from the pen or mouth of the Plaintiff – supports the ALJ's finding that Plaintiff's complaints of pain were at least partially incredible and his assessment that Plaintiff could perform medium work notwithstanding his complaints of pain and in spite of his medical conditions, as severe as they might be. The ALJ did not err, as his opinion was supported by substantial evidence. Plaintiff has not carried his burden, and his claim must fail.

## V. Conclusion

For all of the reasons stated above, the decision of the ALJ, which is also the final decision of the Commissioner, shall affirmed.

Accordingly, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 12] shall be, and the same hereby is, **GRANTED.**

14

(2) That Plaintiff's motion for summary judgment [Record No. 11] shall be, and the same hereby is, **DENIED.**

This the 1st day of October, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge